**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

DANA RACINE,                       :
                                   :   Civil Action No. 07-1834 (JBS)
            Petitioner,            :
                                   :
       v.                          :   **OPINION**
                                   :
FEDERAL BUREAU OF PRISONS,         :
et al.,                            :
                                   :
            Respondents.           :


**APPEARANCES:**

   DANA RACINE, Petitioner pro se
   #09806-052
   F.C.I. Fairton
   P.O. Box 420
   Fairton, New Jersey  08320

   CHRISTOPHER J. CHRISTIE, United States Attorney
   PAUL A. BLAINE, Assistant U.S. Attorney
   Camden Federal Building & U.S. Courthouse
   401 Market Street, P.O. Box 2098
   Camden, New Jersey  08101
   Attorneys for Respondents

**SIMANDLE**, District Judge

   Petitioner Dana Racine ("Racine"), a federal prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The named respondents are the Federal Bureau of Prisons ("BOP") and Paul Schultz, Warden at FCI Fairton.

## I.   BACKGROUND

On May 30, 2001, petitioner Racine was sentenced to a 46-month prison term, to be followed by five years supervised release, by the United States District Court for the Northern District of New York, pursuant to his conviction on charges of conspiracy to possess and distribute marijuana.  Racine was released from prison on October 12, 2004, upon completion of his custodial term with good time credits.  He then began his five-year term of supervised release.  Racine violated the conditions of his supervised release, and on May 18, 2006, he was sentenced to six months of home confinement accordingly.

On December 19, 2006, Racine was arrested again for violating the terms of his supervised release.[1]  He admitted the violations at his January 5, 2007 revocation hearing, and his supervised release was revoked.  Racine was ordered to serve nine months in prison.  His projected release date is September 12, 2007.

Racine filed his habeas petition on or about April 19, 2007.  Respondents report that this petition was filed before Racine's Unit Team had begun consideration of his (residential re-entry

---

[1] Racine admitted to the following violations: (1) failure to complete his six months of home confinement; (2) violating the prohibition to refrain from any contact with a victim; and (3) failure to truthfully answer all the inquiries of his probation officer and follow his probation officer's instructions. (Respondents' Exhibits 2, 3).

center ("RRC") placement.  On May 2, 2007, the Unit Team determined that a 60-90 day RRC placement was appropriate for Racine, to enable him to accumulate release funds, establish employment, and reintegrate into the community.  The Unit Team also made a threat assessment and cleared petitioner for RRC placement medically and psychologically.  The Warden endorsed the Unit Team's assessment and, on May 17, 2007, recommended Racine's RRC placement of 60-90 days to the FBOP's Community Corrections Manager ("CCM") in the Albany, New York vicinage.[2]  Transitional services for Racine were not recommended based on the brief remaining length of Racine's current custodial term.  The actual date of Racine's RRC placement depends upon available bed space in a RRC in the Albany area.  (Resp. Ex. 4 and Declaration of Darren Hackett, Case Manager at FCI Fairton).

Racine brings this habeas petition seeking a full six month period of transitional placement in a halfway house before his projected release date.  He also claims that he is being denied good conduct time on his sentence for violating his supervised release.

Racine admits that he has not attempted to exhaust his administrative remedies because he deems that exercise futile.  However, it would appear that the administrative remedy procedure

---

[2] Racine is expected to reside in the Albany, New York area upon his release.

might be futile given the imminent date scheduled for Racine's projected release date of September 12, 2007.

The respondents answered the petition on May 22, 2007, contending that Racine's RRC placement was recently determined consistent with the Third Circuit's directive in <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235 (2005); namely, that the BOP shall consider the factors set forth in 18 U.S.C. § 3621(b). Respondents further allege that, upon their good faith determination, the Unit Team recommended that Racine be placed in a RRC for 60 to 90 days before his projected release date of September 12, 2007. This recommendation did not restrict petitioner's RRC placement to a 10% limitation; a 10% limitation would have yielded a placement of no more than 28 days.

## II.   <u>RELEVANT STATUTES AND REGULATIONS</u>

Federal law imposes upon the BOP the obligation and discretion to designate the place of a prisoner's imprisonment, as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoners's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> > (1) the resources of the facility contemplated;
> > (2) the nature and circumstances of the offense;
> > (3) the history and characteristics of the prisoner;

>        (4) any statement by the court that imposed the
>    sentence--
>            (A) concerning the purposes for which the
>    sentence to imprisonment was determined to be
>    warranted; or
>            (B) recommending a type of penal or
>    correctional facility as appropriate; and
>        (5) any pertinent policy statement issued by the
>    Sentencing Commission pursuant to section 994(a)(2) of
>    Title 28.
>
>    In designating the place of imprisonment or making transfers
>    under this subsection, there shall be no favoritism given to
>    prisoners of high social or economic status.  The Bureau may
>    at any time, having regard for the same matters, direct the
>    transfer of a prisoner from one penal or correctional
>    facility to another.

18 U.S.C. § 3621(b).

In addition, federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

>    (c) Pre-release custody.--The Bureau of Prisons shall,
>    to the extent practicable, assure that a prisoner
>    serving a term of imprisonment spends a reasonable
>    part, not to exceed six months, of the last 10 per centum of
>    the term to be served under conditions that will afford the
>    prisoner a reasonable opportunity to adjust to and prepare
>    for the prisoner's re-entry into the community.  ...

18 U.S.C. § 3624(c).

Recently, in <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235 (2005), the Third Circuit Court of Appeals considered and rejected the validity of BOP regulations that became effective on February 14, 2005, which regulations restricted an inmate's CCC transitional placement to the last 10% of the inmate's sentence.

Instead, the Third Circuit held that both initial placement decisions and pre-release transfer decisions must be individualized determinations based upon the factors enumerated in § 3621(b).

> In sum, individual determinations are required by § 3621(b). ... While the BOP may exercise considerable discretion, it must do so using the factors the Congress has specifically enumerated.
>
> ...
>
> The dissent argues that the § 3621(b) factors need not be considered by the BOP until an inmate transfer is "actually considered."  We disagree. ...
>
> ... The statute as a whole, if it is to have practical effect, indicates that the factors enumerated must be considered in making determinations regarding where to initially place an inmate, as well as whether <u>or</u> <u>not</u> to transfer him. ... The congressional intent here is clear:  determinations regarding the placement scheme-including where a prisoner is held, and when transfer is appropriate-must take into consideration individualized circumstances. ...
>
> ...
>
> In short, we conclude that the § 3621(b) factors apply to BOP determinations regarding whether or not initial placements or transfers are appropriate.  We thus do not find that the factors are limited by the temporal references in § 3624.

<u>Woodall</u>, 432 F.3d at 247, 249-50.

Thus, a prisoner is entitled to an individualized determination as to his pre-release placement based upon the factors identified in § 3621(b).  However, as noted by the Third Circuit, the fact that the BOP <u>may</u> assign a prisoner to a CCC does not mean that it <u>must</u>.

6

III.  ANALYSIS

A.  Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.[3]  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

---

[3]  To exhaust administrative remedies before the Federal Bureau of Prisons, a federal inmate seeking review of an aspect of his confinement must first seek to resolve the dispute informally.  See 28 C.F.R. § 542.13.  If the inmate does not receive a favorable termination, he may submit a formal written Administrative Remedy Request for response by the warden of the facility.  See 28 C.F.R. § 542.14.  If the inmate is not satisfied with the warden's response, he may appeal the warden's decision to the Regional Director within 20 days of the date of the decision.  If he is not satisfied with the Regional Director's response, he may submit an appeal of the Regional Director's decision to the Central Office within 30 days of the date of the decision.  See C.F.R. § 542.15.  If these responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit. See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998). The court recognized that exhaustion could be excused where it would be futile. See id. In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial. Thus, the court addressed the claims on the merits.

8

Likewise, in <u>Ferrante v. Bureau of Prisons</u>, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. <u>See</u> 990 F. Supp. 367, 370 (D.N.J. 1998)(citing <u>Snisky</u>, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  <u>See id.</u>  <u>See also</u> <u>Fraley v. Bureau of Prisons</u>, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, respondents allege that Racine did not exhaust his administrative remedies.  Racine contends that resort to administrative remedies given the imminence of his projected release date would be futile.

The goals of administrative review are especially pertinent under the circumstances of this case.  Namely, facilitating judicial review and conserving judicial resources by allowing the BOP the opportunity to develop a factual record and apply its expertise in decisions respecting a federal inmate's placement and/or transfer during his term of incarceration; permitting the BOP the opportunity to grant more RRC placement time if it deems

such relief appropriate; and providing the BOP the opportunity to correct any error thereby fostering administrative autonomy.

Here, however, this Court finds that any effort by Racine in exhausting his administrative remedies at this point would likely be futile since his projected release date is fast approaching. Therefore, this Court will review the merits of Racine's petition rather than dismiss it on this procedural ground.

B.  RRC Placement Decision

Based on the record provided by respondents, this Court finds that the Unit Team's recommendation was made with regard to the factors set forth in § 3621(b) and Woodall, and without regard to the February 2005 regulations' strict 10% limitation on CCC placement.  The Unit Team considered the enumerated factors, and found that Racine did not have a demonstrated need for RRC placement longer than 60-90 days before his projected release date.  In fact, this recommended period of transitional placement is more than 10% of Racine's sentence.  Petitioner's allegations that FCI Fairton staff did not give his RRC placement priority or that they told him he would be lucky to get 30 days are belied by the actual recommendation made by the Unit Team and Warden.

Thus, as demonstrated above, it is clear that the BOP's decision in this regard was within the agency's discretionary authority under § 3621(b), based on its consideration of numerous factors, including Racine's transitional needs given the short

duration of his prison sentence. Racine has indicated no special need for transitional placement longer than that recommended. Consequently, there is no demonstrated need for an earlier release for reintegration into the community based on all the placement factors considered by the Unit Team and Warden pursuant to 18 U.S.C. § 3621(b).

C.  Good Conduct Time

Racine next argues that he should have been awarded good conduct time on his sentence for violating supervised release because it is a continuation of his underlying sentence on the marijuana possession and distribution conviction. Respondents counter that Racine's prison sentence on the underlying conviction had been fully discharged upon his satisfaction of and release from that prison term on October 12, 2004. All good conduct time on that sentence had been applied and there was no amount of undischarged time left to be served on Racine's sentence for the underlying marijuana conviction as of October 12, 2004, when he was released for his term of supervised release. Respondents further argue that since supervised release is a sentencing provision separate and apart from an inmate's original, underlying prison term, Racine is not serving a continuum period of imprisonment, but rather, he is serving a new sentence. Consequently, because the sentence for violating supervised release was a term of nine months, or less than one

11

year, Racine is not entitled to receive any good conduct time. See U.S.C. § 3624(b)(1).

Section 3624(b) of the United States Code, Title 18, governs good conduct time for federal prisoners.  This section reads:

> "Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.  ...  Credit that has not been earned may not later be granted.  Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence."

18 U.S.C. § 3624(b)(1).

Thus, an inmate serving a sentence of imprisonment of one year or less is not entitled to receive good conduct time credit because the statute authorizing the award of good conduct time does not contemplate sentences less than one year.

Given Racine's prison term of nine months for violating supervised release, he is not entitled to receive good conduct time pursuant to 18 U.S.C. § 3624(b)(1), which provides for the award of good conduct time only for inmates serving prison terms of more than one year.  Moreover, this Court finds no merit to Racine's contention that his sentence on violating supervised release is a continuation of and part of his original custodial term on his underlying drug conviction.  While supervised release

12

is imposed as part of the original sentence, any incarceration ensuing from the revocation of supervised release is generally based on new conduct, and "is wholly derived from a different source, and has different objectives altogether; it is therefore a different beast." United States v. McNeil, 415 F.3d 273, 277 (2d Cir. 2005)(citing United States v. Wirth, 250 F.3d 165, 170 n. 3 (2d Cir. 2001).  Consequently, Racine's prison term for violating supervised release is separate and distinct from his original prison term for his marijuana conviction, which he had served to completion upon his discharge on October 12, 2004.

Therefore, Racine's claim for award of good conduct time on his nine month prison term for violating supervised release is without merit and will be denied accordingly.

### IV.   CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


                                    s/ Jerome B. Simandle
                                    Jerome B. Simandle
                                    United States District Judge

Dated: **May 31, 2007**